UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GLEN FRANKLIN JACKSON, | ) | Civil Action No.: 4:20-CV-01890-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.   Procedural History

Plaintiff filed an application for SSI on August 7, 2017, alleging inability to work since January 3, 2017. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on March 29, 2019, at which time Plaintiff testified. (Tr. 15). The Administrative Law Judge (ALJ) issued an unfavorable decision on May 13, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-22). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on April 7, 2020, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Plaintiff filed this action

on May 18, 2020. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

    **1.     Introductory Facts**

Plaintiff was born on May 22, 1971, and was forty-six years old on the date the application was filed. (Tr. 20). Plaintiff had a limited education and had past work as a welder and construction worker. (Tr. 20). Plaintiff alleged disability originally due to severe calcaneal on left heel. (Tr. 50).

    **2.     Medical Records and Opinions**

**2017**

On January 4, 2017, Plaintiff was seen in the emergency room. (Tr. 246). Plaintiff was unable to ambulate after falling 10 feet on both feet. (Tr. 247). Plaintiff was in severe pain. (Tr. 247). Plaintiff smoked two packs a day and drank 12-18 beers a day. (Tr. 247-248). Upon exam, Plaintiff had edema and tenderness. Plaintiff had marked left calcaneus bruising and swelling. (Tr. 249). Imaging showed severely comminuted and displaced calcaneal fracture. (Tr. 249). There were at least three primary fracture lines. (Tr. 252). Plaintiff received Percocet prescription and IV morphine. (Tr. 249-250).

On January 5, 2017, Plaintiff was seen by Dr. Boyer of Lexington Orthopaedics. (Tr. 236). Imaging showed comminuted intra-articular calcaneal fracture. Plaintiff presented on crutches in a splint with swelling and bruising and tender to palpation. (Tr. 236). Plaintiff was prescribed Percocet. (Tr. 236). There was a long discussion about options. (Tr. 237). Plan was to try to keep him comfortable and he was to remain strictly nonweightbearing. (Tr. 237).

On January 19, 2017, Plaintiff was seen by Dr. Boyer. Plaintiff received a Norco prescription. (Tr. 238).

On February 2, 2017, Plaintiff was seen by Dr. Boyer. Plaintiff had been comfortable in his boot, was trying to be nonweightbearing, and was using an Ace wrap. (Tr. 239). Exam showed resolving fracture blisters moderately swollen in boot on crutches. (Tr. 239). Imaging showed consolidation posttraumatic deformity. (Tr. 239). Plan was to remain nonweightbearing. (Tr. 239).

On August 8, 2018, Plaintiff was seen by Dr. Boyer. Plaintiff had some pain and swelling. Plaintiff was trying to find work, but it was very difficult with a limp and with difficulty standing and walking. (Tr. 241). Imaging showed healed calcaneus fracture with malunion. (Tr. 242). Upon exam, Plaintiff was swollen and tender. Plaintiff walked with antalgic gait and was tender on ankle calcaneus and subtalar joint. Assessment was calcaneal fracture malunion pain. (Tr. 242).

On August 8, 2017, Dr. Boyer wrote a letter that Plaintiff had been under his care for 7 months for a severe calcaneal fracture treated without surgery. "I expect that he will have continued significant disability as related to his injury, malunion deformity, and post traumatic arthritis. He will likely not tolerate any prolonged standing or walking." (Tr. 228).

On October 2, 2017, Plaintiff completed a pain questionnaire. (Tr. 188). Plaintiff's pain was located in his left heel and hurt when walking or standing. Pain lasts most of the day. Plaintiff takes 3 Aleve daily. (Tr. 186). Medication relieves pain. (Tr. 186). Plaintiff could not afford surgery. Plaintiff uses ace bandage, stocking, and boot. (Tr. 187). Plaintiff elevates his foot and uses ice to keep swelling down. Plaintiff does chores. Plaintiff cannot walk to go fishing. (Tr. 187). Plaintiff can do errands without assistance. Plaintiff can walk 50 yards. Plaintiff can stand 30 minutes. Plaintiff is able to sit with elevation and ice. Plaintiff can do light chores. (Tr. 188).

**2018**

On January 29, 2018, imaging showed comminuted and now healed midbody calcaneal

3

fracture, distortion of the subtalar joints, shortening and some angular deformity of the healed midbody. Fracture was malaligned. (Tr. 265).

On February 5, 2018, Dr. Walker, M.D., a non-examining state agency consultant, opined an RFC of sedentary. There are notes that claimant was to be called and asked if he used an assistive device. "Per DPS," no assistive device was used. However, Dr. Walker stated "a cane will be needed for prolonged walking to be effective." (Tr. 57-58). On June 5, 2018, Dr. Burge, a non-examining state agency consultant, affirmed this assessment on reconsideration. (Tr. 73).

Plaintiff reported that in April 2018 the swelling was worsening with increasing pain with ambulation and decreased ability to perform daily living activities and increased inability to sit, stand, and ambulate any distance. (Tr. 214).

On May 25, 2018, Plaintiff was examined by consultant Dr. Daniels. (Tr. 267). "Because of his insurance status, the patient did not undergo surgery, so was put in an offloading boot." Plaintiff reported he still has pain, limps, and has swelling. Plaintiff can stand for 15 minutes. Plaintiff can "walk continuously for 15 minutes, but he must use a four-pronged cane." Plaintiff reported he could sit without any difficultly. (Tr. 267). Plaintiff still smoked two packs a day. (Tr. 267). Plaintiff was in no acute distress. (Tr. 267). Upon exam, Plaintiff moved from the chair to the table with an obvious limp in his left extremity with obvious deformity of swelling in the left ankle. Plaintiff presented with a four pronged cane. Plaintiff had reduced range of motion in his left ankle. Plaintiff was only able to partially squat. "He was completely unable to perform the tandem walk, heel walk, and toe walk. Patient tried on two occasions but was unable to." "In the left lower extremity, [Plaintiff] demonstrated 4/5 strength in the proximal muscle groups above his left knee and 3/5 strength in the distal muscle groups below his left knee." (Tr. 268). Plaintiff's left lower extremity

had no Achilles tendon reflex. (Tr. 269). Diagnosis were gait abnormality and chronic left ankle and heel pain secondary to traumatic injury. (Tr. 269). "The patient has significant range of motion issues and strength issues in his left ankle and foot. I suspect this would affect his current work status." (Tr. 269).

In September 2018, Plaintiff reported taking three ibuprofen three times a day for pain. (Tr. 221).

In October 2018, a physical therapist Hill wrote Plaintiff's attorney after being seen in October 2018. Plaintiff reported constant pain and swelling and difficulty wearing a shoe on his left foot. Plaintiff had atrophy present in his left lower extremity with a 24% lower extremity impairment rating. Plaintiff had weakness and decreased range of motion upon exam in that extremity. (Tr. 272-273). In a separate letter dated the same date, Plaintiff was found to be able to meet the demands of limited sedentary to limited light work. Plaintiff tolerated occasional walking with a quad cane. Plaintiff could stand for 23 minutes. Plaintiff put forth consistent effort. At the completion of testing, his left foot was 2.6 cm larger. (Tr. 274).

## C.     The Administrative Proceedings

### 1.     The Administrative Hearing

#### a.     Plaintiff's Testimony

On March 29, 2019, a hearing was held before ALJ Jamison. Plaintiff was represented. Ziegler testified as a VE. (Tr. 28). There were some records missing, which Plaintiff's attorney provided. (Tr. 31). Plaintiff's attorney argued the severe impairments were an improperly healed severe calcaneal fracture, lower extremity dysfunction, and severe pain. (Tr. 33). Plaintiff was extremely limited in reading and writing after failing out of ninth grade. (Tr. 34). Listing arguments

were under 1.02 and 1.06. (Tr. 34).

In January 2017, Plaintiff fell 25 feet onto a concrete slab while working and shattered his heel bone. Plaintiff could not afford surgery. (Tr. 37). Plaintiff did not have insurance, Medicaid, Medicare, or Workers' Compensation. (Tr. 37-38). Plaintiff was given a boot and crutches. Plaintiff has not been able to work since. (Tr. 38). Plaintiff had a cane at the hearing. Dr. Boyer prescribed the cane. (Tr. 38). Plaintiff can only walk a block. Plaintiff only takes ibuprofen. Plaintiff has no insurance and no money to seek additional medical care. (Tr. 39). Plaintiff testified he was not supposed to be on his feet very long. (Tr. 39). When Plaintiff tries to walk without his cane, he cannot stand or balance correctly. (Tr. 39-40). Plaintiff cannot carry anything over 10 pounds. Plaintiff cannot sit longer than an hour. (Tr. 40). Plaintiff's driver's license was suspended due to DUI. (Tr. 40). Plaintiff can feel pain when seated. Plaintiff's pain was a five seated and seven standing/walking. (Tr. 41).

### b.    Vocational Evidence

The VE testified to PRW. (Tr. 44). Past work was eliminated for the hypothetical individual who was limited to sedentary, never push/pull foot controls on left, occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, occasionally balance/kneel/crouch/crawl, and never be exposed to extreme cold, vibration, unprotected heights, or hazardous moving mechanical parts. (Tr. 44). Other available jobs were parimutuel ticket checker, document preparer/microfilming, and call-out operator. (Tr. 45). With the addition of never stand/walk in a work day, and never climb/balance/kneel/crouch/crawl, all three same jobs would be available as they are performed sitting. (Tr. 45). Call out operator was eliminated with the other two jobs remaining with the addition of perform detailed but noncomplex written or oral instructions, would not be able to work at a pace

as determined by the speed of machinery or equipment, could interact with supervisors occasionally, could interact with coworkers no more than occasionally and superficially, no interaction with the public, and tolerates no more than ordinary and routine changes in work setting and duties. (Tr. 46). An additional third job would be addresser. (Tr. 46). Absent three days a month or breaks/off task 20% of the time were work preclusive individually. (Tr. 47). Testimony was said to be consistent with DOT with exception of off task and absences. (Tr. 47).

### 2. The ALJ's Decision

In the decision of May 13, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 22):

1. The claimant has not engaged in substantial gainful activity since August 7, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairment: status post left leg fracture (20 CFR 416.920(c) ).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he is never able to push and/or pull foot controls with the left foot, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can occasionally balance, kneel, crouch, and crawl. He can never be exposed to unprotected heights, hazardous moving mechanical parts, extreme cold, or vibration.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 22, 1971 and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 7, 2017, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in making the RFC determination by failing to analyze Plaintiff's assistive device use and by failing to consider evidence regarding elevation of left leg and problems wearing a shoe. Plaintiff argues the ALJ erred in the subjective symptom evaluation.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.   LEGAL FRAMEWORK

#### 1.   The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A). To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability

claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.     ANALYSIS**

**RFC**

Plaintiff argues the ALJ erred in making the RFC determination by failing to analyze Plaintiff's assistive device use and by failing to consider evidence regarding elevation of left leg and problems wearing a shoe.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)

(*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

<u>Assistive Device</u>

In addressing the Listings, the ALJ noted Plaintiff was able to ambulate with the use of a single cane. (Tr. 18). The ALJ discussed Plaintiff's testimony that he could walk one block with the use of a cane. (Tr. 19). The ALJ noted use of a four pronged cane at the consultative examination and Plaintiff's inability to perform tandem walk, heel walk, or toe walk. (Tr. 19). The ALJ noted a physical therapist's evaluation of limitation to occasional walking with a quad cane and found it somewhat persuasive as somewhat consistent with statements of doctors and with the record. (Tr. 20). "In sum, the above [RFC] is supported by the claimant's history of left calcaneal fracture, with symptomatic malunion, which causes significant pain with prolonged standing and walking, and therefore limits him to sedentary work." (Tr. 20).

SSR96-9p is applicable to an RFC for less than a full range of sedentary work, like Plaintiff's RFC. SSR 96-9p, 1996 WL 374185, *1. "Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* at *3. A sedentary RFC encompasses standing/walking up to 2 hours a day. *Id.* As to device use:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

*Id.* at *7.

The ALJ here did not include the use of an assistive device in the RFC. The ALJ also did not limit Plaintiff to never walk/stand. Sedentary includes up to two hours of walk/stand by definition. However, the lack of analysis under SSR96-9p of assistive device use is not an outcome determinative error here because the VE testified the same exact three jobs were available if the RFC were limited to never stand/walk, where Plaintiff was always sitting. (Tr. 45).

Elevation and Shoe Usage

The ALJ noted Plaintiff reported swelling and exams showed swelling. (Tr. 19). The ALJ noted Plaintiff testified he used elevation and ice. (Tr. 18). Plaintiff notes that the ALJ did not note objective findings that Plaintiff's left foot was larger after a testing evaluation. (ECF No. 19 at 14). Plaintiff argues the ALJ did not explain why the evidence of swelling did not translate into an accommodation for elevating Plaintiff's foot in the RFC. Defendant notes that the specific testing evaluation referenced included standing/walking for 23 minutes, which would not be required in the specific jobs testified to by the VE. (Tr. 45); (ECF No. 21 at 12).

Plaintiff makes no further arguments regarding shoe usage. There is one reference in the record where Plaintiff reported to an evaluator that he had difficulty wearing shoes.

The ALJ's RFC determination is supported by substantial evidence as there is no contrary evidence in the record supporting a finding that Plaintiff is required to elevate his leg in order to work—making him incapable of performing a range of sedentary work. *See Webb v. Berryhill*, No. 8:17-CV-01912-JMC-JDA, 2018 WL 5020161, at *11 (D.S.C. July 23, 2018), *adopted by* 2018 WL 4575154 (D.S.C. Sept. 25, 2018)(where an ALJ noted testimony regarding elevation and swelling,

plaintiff failed to meet burden showing that she was *medically required* to elevate her legs; the court declined to weigh again the same evidence weighed by the ALJ); *Parrish v. Colvin*, No. 1:09-CV-845, 2014 WL 3107292, at *6 (M.D.N.C. July 7, 2014) (rejecting argument the ALJ erred in failing to discuss the plaintiff's testimony that he suffered from swelling necessitating he elevate his legs during the day where the record contained no such physician's recommendation that he do so).

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ failed to properly perform the subjective symptom evaluation.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.

1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR

16-3p, at *11.

The ALJ considered Plaintiff's allegations and made findings regarding Plaintiff's allegations:

> The claimant alleges that he is unable to work due to pain in his left heel following an injury on January 3, 2017 (Ex. 4E). He reported that his pain is triggered by walking on his feet for too long and relieved by rest (Ex. 4E). He reported that surgery was recommended, but that he is unable to afford it, and therefore has relied upon conservative treatment, including an orthopedic boot, elevation, ice packs, and over-the-counter medication. He reported that he is able to walk 50 yards or stand 30 minutes at a time (Ex. 4E). At the hearing, he testified that he is limited to walking one block, with the use of a cane, carrying 10 lbs., and sitting for not more than an hour. He testified that he experiences pain at 5 out of 10 while seated and 7 out of 10 while standing.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the record does not demonstrate inability to perform sedentary work.

(Tr. 18-19). While Plaintiff's allegations and objective evidence supported a reduction to a reduced sedentary range, within which there were available jobs, the ALJ found that Plaintiff's allegations that he was unable to perform seated work was not supported by the "record of the opinions of any of the medical experts." (Tr. 20). Inapposite Plaintiff's argument, the ALJ here did not make only a single conclusory statement regarding the subjective symptom evaluation, as the court reviews the opinion as a whole. (ECF No. 19 at 16).

Consistent with the governing regulations, the ALJ here considered the entire record in evaluating the subjective complaints. Substantial evidence supports the ALJ's findings on the

subjective symptom evaluation and the RFC.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| | s/Thomas E. Rogers, III |
| May 18, 2021 | Thomas E. Rogers, III |
| Florence, South Carolina | United States Magistrate Judge |